306 A.2d 166.

STATE *vs.* EMIL JOSEPH CARSETTI, JR. *et al.*

JUNE 20, 1973.

PRESENT: Roberts, C. J., Paolino, Kelleher and Doris, JJ.

PAOLINO, J. The defendants were jointly indicted for statutory burning and conspiracy to set fire to the Adult Correctional Institutions at Howard and were subsequently found guilty by a jury. After their motions for new trials on the usual grounds were denied, each defendant was sen-

tenced to serve a 15-year term which was to begin from and after the term he was then serving for a prior offense.[1]

Within one year of the denial of their motions, two of the defendants, Raymond Wilbur and Emil J. Carsetti, Jr., filed a petition in this court for leave to file a motion for a new trial on the ground of newly discovered evidence. We granted the petition and remanded the papers to the Superior Court with direction to allow defendants to file such motion and that it be heard as fully as if the motion had been regularly filed. *Wilbur et al.* v. *State*, 108 R. I. 901-02, 271 A.2d 472 (1970).

The motion was heard and denied. The case is before us now on defendants', Wilbur's and Carsetti's bill of exceptions. For convenience, we may, at times, refer to Wilbur and Carsetti as defendants.

The nature of the exceptions briefed and argued by defendants does not require a detailed discussion of the factual background of this case. It is sufficient now to say that sometime around five minutes after eleven a.m. on May 23, 1969, evidence of a fire was discovered in the north wing of the Adult Correctional Institutions. The fire resulted in extensive damage to the building. At the time of the fire all three defendants were confined in the maximum security building and were serving sentences previously imposed. At the trial on the indictments the state presented the testimony of certain eyewitnesses who connected all three defendants with the fire. In addition to this direct testimony the state introduced certain circumstantial evidence in an attempt to establish the guilt of all three defendants. With this background in mind, we shall proceed to discuss the issues raised by defendants in this appeal.

---

[1]Mr. D'Amico was the third defendant in this Superior Court action. However, he is not a party to this appeal.

## I

We consider first the argument made by Wilbur and Carsetti that the trial justice abused his discretion in denying their motions to sever the case. They state that motions to sever were made on their behalf on several occasions because they were of the opinion (1) that they would not get a fair trial if their case was tried with D'Amico's case; (2) that D'Amico might decide not to cooperate with their attorneys during the trial; and (3) that D'Amico's refusal to testify after having said that he would made their positions extremely weak.

The state argues that this issue is not properly before us because of the failure of defendants to comply with certain procedural rules relating to the taking of proper exceptions, et cetera. There may be some merit to the state's position. However, since we have examined the pertinent portions of the record in the context of defendants' present arguments, we shall assume that this question is properly here.

Generally speaking a severance should be granted when the defenses of several defendants jointly indicted are antagonistic to each other, or when it appears that a defendant would be prejudiced on a joint trial by the reception of evidence which is not admissible as against him, but which is competent as against his codefendant, or whenever it will otherwise best serve the ends of justice. 5 Wharton, *Criminal Procedure* §1946 at 58-59 (10th ed. 1957). However, a severance is not a matter of right but is wholly within the discretion of the trial court, *Anthony v. State*, 2 R. I. 305, 308 (1852), and will not be disturbed by this court unless clearly wrong.

The defendants state that they were prejudiced by the denial of their motion for a severance but they fail to point out how they were prejudiced or wherein they failed to receive a fair trial by the denial of such motion. On this

record they have failed to persuade us that their defenses were antagonistic to each other or that they were otherwise unfairly prejudiced by the denial of their motions to sever. In the circumstances here they have failed to persuade us that the denial of their motions was an abuse of discretion.

## II

The defendants next contend that the trial justice erred in denying their motion for a view of the Adult Correctional Institutions where the fire occurred. The motion was made to enable the jury to see the corridors, tiers and other buildings. Their purpose was to show the jury how impossible it would be for an inmate to travel all the way across the prison compound, to enter the cellblock building, to climb to the third tier of a cellblock where he did not belong, to descend and go back to his own cell in another building and never, at any time, be observed by any correctional officer. The defendants argue that the extreme difficulty of this feat could not be conveyed by a simple floor plan of the cellblock structures with no other reference to the other buildings involved. The defendants further argue that the areas involved were not everyday places which would be familiar to the jury.

The trial justice based his decision denying the view on the ground that the diagrams showing the floor layout and the elevations would provide sufficient help to the jury and, therefore, a view was not necessary. In the course of his decision he said:

> "You know, we've got that Ajootian condemnation case, [*Ajootian* v. *Director of Public Works,* 90 R. I. 96, 155 A.2d 244 (1959)] the civil case, where the supreme court said it was error for the court to permit a view if there have been some substantial changes in circumstances."

The power to grant or deny a motion for a view is generally a matter of discretion for the trial justice. *DiMaio*

v. *Del Sesto,* 102 R. I. 116, 228 A.2d 861 (1967). As the court said in that case:

> " * * * the taking of a view is addressed to the discretion of the court and, if in his judgment, a view will not aid or is not necessary to assist the jury in understanding the evidence, the trial justice's denial of such a request is rarely if ever open to question." *Id.* at 120, 228 A.2d at 863.

The defendants agree with this statement of the rule, but in reliance on certain language in *MacKenzie & Shea* v. *R. I. Hospital Trust Co.,* 45 R. I. 407, 122 A. 774 (1923), they argue that the trial justice committed reversible error in relying on *Ajootian* for the proposition that it would be " * * * error for a court to permit a view if there have been some substantial changes in circumstances." The language in question says that a discretionary ruling

> " * * * is reviewable and will be set aside, if it appears that the inferior court acted in abuse of its discretion, or that its decision was based upon a mistake as to its powers, *or upon some other error of law not involving discretion.*" (emphasis added) *Id.* at 412, 122 A. at 776.

The defendants argue in substance that the trial justice rested his decision exclusively upon *Ajootian;* that *Ajootian* does not stand for what the trial justice stated; and that therefore the trial justice based his decision upon some other error of law not involving discretion. It is clear from a reading of the trial justice's decision that he did not rest his decision on this motion exclusively upon *Ajootian.* As we have stated above, it appears that the trial justice based his decision upon his conclusion that the diagram and photographs would provide sufficient help for the jury in understanding the evidence and that, therefore, a view was not necessary. The defendants have failed to persuade us that they were in any way unfairly prejudiced by the absence of a view. *State* v. *Taylor,* 46 N.J. 316, 217 A.2d 1 (1966).

2 Wharton, *Criminal Evidence* §681 at 632-36 (12th ed. 1955).

Finally even if we can assume that the trial justice rested his decision exclusively upon *Ajootian* and that such reliance was error, it does not necessarily follow that his decision was erroneous. The real question before us is whether the ultimate ruling on this issue was correct and not whether the reasons on which it is based are correct. *Bric's Market, Inc.* v. *State,* 105 R. I. 572, 577, 253 A.2d 590, 592 (1969). *See* 5B C.J.S. *Appeal & Error* §1813 (1958). *See also* 5 Am. Jur.2d *Appeal & Error* §727 (1962). Our own examination of the pertinent portions of the evidence indicates that the diagrams and photographs were sufficient to help the jury to understand the evidence pertaining to the physical layout of the areas in question. On this record defendants have failed to make a clear showing of an abuse of discretion. *Wharton, supra.* We find no error in the ruling of the trial justice denying defendants' motion for a view.

### III

The defendants' final contention is that the trial justice erred in denying their motions for a new trial on the grounds of newly discovered evidence, namely, the post-trial confession of codefendant, Gennaro D'Amico.

It appears from the record that after the conviction of all three defendants, one of them, Gennaro D'Amico, signed an affidavit dated March 12, 1970, inculpating himself and exculpating the other two defendants. This affidavit was attached to the petition for leave to file a motion for a new trial which was filed in this court by Carsetti and Wilbur. The hearing held pursuant to the direction of this court, *see Wilbur* v. *State,* 108 R. I. 901-02, 271 A.2d 472 (1970), took place before a justice of the Superior Court on January 28, 1971. It appears that D'Amico was in the building but not in the courtroom. Although counsel for one of defendants stated that he would "like to have him brought

up," he did not press his desire. In fact the transcript of that hearing indicates that when asked by the trial justice if they wanted D'Amico to testify to anything beyond the statement in the affidavit, counsel for both defendants replied in the negative. The defendants Wilbur and Carsetti were in the courtroom during the hearing on their motions for a new trial.

The trial justice was given a copy of the March 12, 1970 affidavit and, in addition, another affidavit signed by D'Amico and dated April 6, 1970. After listening to oral arguments of counsel and after examining and considering the contents of the two affidavits, the trial justice denied the motion of each defendant. In rendering his decision he discussed at some length the evidence presented at the trial of all three defendants on the indictment — he was the judge who presided at that trial. He referred to the fact that throughout the trial he was indulgent in granting time for counsel for all three defendants to confer and discuss the case as they went along. He referred to the fact that there were no confessions then; that throughout the trial there was no conflict in interest; and that defendants presented a strong defense together. He concluded that both of D'Amico's affidavits were recent fabrications and that he was not accepting the two affidavits as newly discovered evidence.

He further stated that D'Amico's attempt, after his own conviction and after exhausting all possible remedies in his own case, to absolve his two friends Carsetti and Wilbur and take the blame himself, did not impress him at all. He said he found D'Amico's statements altogether unreliable. Further he stated that the trial on the indictments was capably tried by capable counsel, that all three defendants got a fair trial, and that he was satisfied as to the guilt of all three defendants. Finally, he concluded that

D'Amico's statements, even if given before the jury, would not affect the verdict.

The sum and substance of defendants' contentions are that the trial justice acted arbitrarily and capriciously in passing on the credibility of D'Amico's affidavits. They argue that this is not the situation where the confessor has previously proclaimed his innocence on the stand under oath and then reverses his prior testimony by a later affidavit, also under oath. *See State* v. *Carter,* 158 N.W.2d 651 (Iowa 1968); *State* v. *Valcour,* 247 La. 450, 172 So.2d 74 (1965). Nor, they argue, is this a case where the affidavit lacks credibility because of major conflicts between the facts determined at the trial and the facts in the statement itself. *See Fast* v. *State,* 221 So.2d 203 (Fla. App. 1969); *Booker* v. *State,* 244 Ark. 745, 427 S.W.2d 177 (1968). In the case at bar, defendants point out, D'Amico never testified at the trial or at any other time and therefore, they argue, his confession does not constitute any reversal of previous testimony that would enable the trial justice to rule that the affidavits were unworthy of belief. They also argue that since D'Amico never took the stand at the hearing on the motions for a new trial, the presiding justice never had an opportunity at any time to observe the demeanor of D'Amico under oath. Additionally, they argue that the facts contained in the affidavit do not seriously conflict with the facts determined at the trial. In summary, they argue that there is no basis for the trial justice's conclusion that D'Amico's statements were not credible.

The general rule in this state governing the duty of a trial justice in passing on a motion for a new trial on the ground of newly discovered evidence is not in dispute here. Before the new evidence can be classified as "newly discovered" and therefore entitled to consideration by the trial justice, it must meet the following tests. The evidence must

actually be newly discovered since the trial. The facts must indicate diligence on the part of a defendant to try to discover this evidence for use at the original trial. *State v. Buckley,* 104 R. I. 317, 244 A.2d 254 (1968); *State v. Sullivan,* 83 R. I. 1, 111 A.2d 838 (1955). The evidence must not be merely cumulative nor merely impeaching. *Carmara v. Rodrigues,* 74 R. I. 161, 59 A.2d 354 (1948). The evidence must be material to the issue. *Gorman v. Lambert,* 152 A. 319 (R. I. 1930). The new evidence would probably change the verdict at a new trial.

In his decision denying defendants' motions it appears that the trial justice was not satisfied that D'Amico's affidavits actually met these tests. He expressed doubt as to whether his confession was, in fact, newly discovered since the trial and he stated that, on the basis of the whole record, D'Amico's statements, even made before the jury, would not change the outcome.

The defendants argue strenuously that D'Amico's statements do fit all the criteria for newly discovered evidence. Their argument on this issue is not contradicted by the state — in fact it appears that the state assumed that D'Amico's statements do qualify as newly discovered evidence. For the purposes of this case we shall do likewise.

The question of granting or denying a motion for a new trial on the basis of a post-trial confession of a codefendant has not, as far as our research discloses, been decided by this court. This case, insofar as this question is concerned, presents a question of first impression in this state. However, as is evidenced by the cases cited by the state and defendants, post-trial confessions have long been considered as newly discovered evidence in many of our sister states and in the federal courts. *See United States v. Trudo,* 449 F.2d 649 (2d Cir. 1971); *United States v. Maddox,* 444 F.2d 148 (2d Cir. 1971); *DeBinder v. United States,* 303 F.2d 203 (D.D.C. 1962); *Huckabee v. State,* 174 Ark. 859,

296 S.W. 716 (1927); *Bowman* v. *State,* 95 Ga. 496, 22 S.E. 274 (1894); *People* v. *McMahon,* 359 Ill. 97, 194 N.E. 233 (1934); *Ward* v. *State,* 235 Ind. 531, 135 N.E.2d 509 (1956); *People* v. *McAllister,* 16 Mich. App. 217, 167 N.W.2d 600 (1960); *State* v. *Bock,* 229 Minn. 449, 39 N.W.2d 887 (1949); *State* v. *Friedman,* 4 N.J.Super. 187, 66 A.2d 555 (1949); *State* v. *Hall,* 27 Ohio Misc. 49, 267 N.E.2d 445 (1971); *Flemming* v. *State,* 95 Vt. 154, 113 A. 783 (1921).

Since we have assumed that D'Amico's affidavits qualified as newly discovered evidence, we are faced with the question of the duty of the trial justice in passing on such evidence. The answer is obvious. He must then decide if it is credible enough to warrant a new trial. In doing this he must follow the rules set down in our cases governing the duty of a trial justice in passing on a motion for a new trial. It is for the trial justice, in passing on a motion for a new trial, to exercise his independent judgment as to the credibility of the witnesses and the weight to be given to their testimony. *State* v. *Correia,* 106 R. I. 655, 663, 262 A.2d 619, 623 (1970).

Since D'Amico did not take the stand at any time the trial justice based his decision on the contents of the affidavits examined in the context of the evidence presented at the trial on the indictments. He concluded that D'Amico's statements were not credible and he gave his reasons for so finding. It is apparent from what he said in his decision that he was convinced from what he saw and heard at the original trial that all three defendants were guilty as charged and that the evidence against them was so strong that D'Amico's post-trial recantation would not affect the outcome. He, therefore, approved the verdict notwithstanding D'Amico's affidavits.

Under our rules that approval cannot be disturbed by us unless it is shown either that the findings on which it is

based are clearly wrong or that in reviewing the evidence the trial justice overlooked or misconceived material evidence which was controlling on this issue. *State* v. *Contreras,* 105 R. I. 523, 530, 253 A.2d 612, 617 (1969). The burden was on defendants to establish that the findings on which the trial justice based his ruling denying their motions for a new trial are clearly wrong or that he overlooked or misconceived material evidence in passing on their motions. They have failed to do either and therefore we cannot disturb the decision of the trial justice.

The defendants' exceptions are overruled, and the case is remitted to the Superior Court for further proceedings.

Mr. Justice Joslin did not participate.

*Richard J. Israel,* Attorney General, *Donald P. Ryan,* Asst. Attorney General, *Edward E. Dillon, Jr.,* Special Asst. Attorney General, for plaintiff.

*William F. Reilly,* Public Defender, *Moses Kando,* Asst. Public Defender, *Leo T. Connors,* for defendants.