STATE

v.

Kenneth E. GIBBONS, Lawrence W.
Fontaine, David Agin.

No. 78–384–C.A.

Supreme Court of Rhode Island.

Aug. 5, 1980.

Dennis J. Roberts, II, Atty. Gen., John E. Migliaccio, Asst. Atty. Gen., for plaintiff.

John A. MacFadyen III, Peter Olsen, Asst. Public Defenders, Edward John Mulligan, Warwick, Levy, Goodman, Semonoff & Gorin, Robert A. Pitassi, Providence, for defendants.

## OPINION

DORIS, Justice.

In this case three defendants, Kenneth E. Gibbons, Lawrence W. Fontaine, and David Agin, appeal from judgments of conviction on charges of rape and committing an abominable and detestable crime against nature entered following a jury trial in the Superior Court. The defendants each challenge the constitutionality of the statute proscribing the crime against nature and Fontaine and Gibbons raise additional claims of error regarding rulings made by the trial justice. The defendant Agin also claims that he was not afforded the effective assistance of counsel. We find no merit in any of these arguments.

On the afternoon of September 14, 1977, the victim of these crimes, Miss D., and her boyfriend went with some friends to the Matador, a cafe in Pawtucket. Approximately one hour later Miss D.'s boyfriend left for the Whitehorse Cafe, another bar, while Miss D. remained at the Matador. Although she had no means of transportation, Miss D. later called her boyfriend and told him that she would meet him at the Whitehorse. According to Miss D., defendant Gibbons offered to give her a ride. The two of them then left the Matador and entered a car parked outside where they were joined by defendants Agin and Fontaine.[1] As they drove off, Miss D. noticed that they were heading away from the

---

1. The defendant Agin testified that when he left the Matador, he found that Gibbons and Miss D. were sitting in the front seat of his car and Fontaine was sitting in the rear seat. Agin contended that although he told Miss D. he would not give her a ride, she persisted in asking for one and remained in the car without objection as they drove away from the Matador. Agin also testified that Miss D. made sexual advances towards him while in the car and that she offered no resistance during any of the subsequent sexual activity between her and the three defendants. Both Gibbons and Fontaine elected not to testify.

Whitehorse Cafe. When she asked where they were going, Fontaine told her to keep quiet and hit her on the head.

After traveling a short distance, they turned off the road and into a gravel-covered area in the woods where Agin, the driver, stopped the car. At this point, the three defendants began struggling with Miss D. and removed some of her clothing. Fontaine then pulled Miss D. from the car and, with the assistance of Gibbons and Agin, dragged her on her back over the gravel and underbrush into a wooded area. Once there, each defendant had Miss D. perform fellatio on him, and Gibbons and Fontaine each twice had sexual intercourse with her. Agin and Fontaine then left the area separately. Gibbons followed Miss D. to the road, where they hitchhiked together back toward the Matador. Gibbons left the car when it stopped at an intersection, and the driver then brought Miss D. to the Matador.

After telling her boyfriend what had happened, Miss D. reported the crimes to the Cumberland police department and then went to the Women and Infants Hospital. Doctor Lynn Lowe, a resident at the hospital, treated Miss D.'s injuries and conducted certain tests to detect the presence of semen.[2] During the examination, Miss D. told Dr. Lowe that she had had sexual intercourse with her boyfriend the previous evening.[3]

The defendants were subsequently indicted for rape, kidnaping, committing an abominable and detestable crime against nature, and conspiracy. Each defendant moved to sever his trial on the ground that the defenses would be antagonistic to one another. The trial justice denied all of the motions to sever. Following the testimony of Miss D., defense counsel sought to impeach her credibility by introducing evidence of her prior sexual conduct with third parties. The trial justice excluded this evidence on relevancy grounds. The jury subsequently found all three defendants guilty of rape and of committing a crime against nature.[4] From the judgments of conviction entered by the Superior Court, defendants now appeal.

■ The defendants argue that G.L.1956 (1969 Reenactment) § 11–10–1 is unconstitutional because it is impermissibly vague and deprives them of their constitutional right of privacy.[5] We recently rejected these same arguments in State v. Santos, R.I., 413 A.2d 58 (1980) and therefore reject defendants' arguments.

Both Fontaine and Gibbons argue that the trial justice erred in denying their motions for severance. Fontaine claims that Agin's testimony tended to inculpate him and that his, Fontaine's defense was prejudiced by the testimony Agin's counsel elicited while cross-examining the victim. Gibbons also asserts that Agin's testimony tended to incriminate him and that their respective defenses were antagonistic. In addition, Gibbons claims error in the trial justice's refusal to allow him to call Fontaine to the witness stand or to comment on Fontaine's election not to testify.

■ The law regarding severance is well settled in Rhode Island. A criminal

2. The results of two of these tests were positive.

3. The trial justice instructed the jury at this time that the evidence that Miss D. had had intercourse with her boyfriend was admissible only on the issue of the source of the semen found in her genital area.

4. The jury found each defendant not guilty on the kidnaping charge. At the beginning of the trial the state dismissed the conspiracy charge.

5. Prior to trial defendant Gibbons moved to dismiss the charge of committing an abominable and detestable crime against nature on the ground that the statute proscribing that conduct, G.L.1956 (1969 Reenactment) § 11–10–1, was unconstitutional. The trial justice assumed the statute was constitutional and denied the motion. Because this court had previously upheld the statute in State v. Milne, 95 R.I. 315, 187 A.2d 136 (1962), the trial justice was correct in denying the motion.

The defendant Agin did not challenge the constitutionality of the statute at trial. He now argues that the matter is within the "deliberate bypass" exception enunciated in State v. McGehearty, R.I., 394 A.2d 1348 (1978). Assuming arguendo that defendant's contention is correct, our decision in State v. Santos, R.I., 413 A.2d 58 (1980) is dispositive of this issue.

defendant is not entitled to severance as a matter of right—the ruling on a motion to sever lies within the discretion of the trial justice. *State v. Patriarca*, 112 R.I. 14, 28, 308 A.2d 300, 310 (1973). In reviewing the denial of a motion to sever, we shall not reverse the trial justice unless the defendant affirmatively shows that he has in fact suffered "prejudice sufficiently substantial to impinge upon his right to a fair trial." *Id.* at 28, 308 A.2d at 310; *accord, State v. Scott*, 114 R.I. 132, 135–36, 330 A.2d 66, 69 (1974). This court has also recognized that the right to a fair trial requires a trial justice to grant a motion for severance when persons who are to be tried jointly intend to present antagonistic defenses. *State v. Carsetti*, 111 R.I. 642, 645, 306 A.2d 166, 168 (1973). The "mere allegations that the co-defendant intends to point an accusatory finger at the defendant," however, do not constitute an antagonistic defense. *State v. Thibodeaux*, 315 So.2d 769, 771 (La.1975); *State v. Patriarca*, 112 R.I, at 29, 308 A.2d at 311; *see Sousa v. United States*, 400 A.2d 1036, 1042 (D.C.App.1979) (that separate trials would have been better for defendant is not grounds for granting severance). This ground for severance contemplates a real and substantial contradiction between the defenses that jeopardize the moving party's right to a fair trial. *Sousa v. United States*, 400 A.2d at 1042 (quoting *Williams v. United States*, 382 A.2d 1, 8 (D.C.App.1978)). A defendant must show that the defenses to be raised are so conflicting and irreconcilable that they will likely cause the jury improperly to infer guilt on the basis of the conflict alone. *Id.* In such a case severance would be warranted, *State v. Thibodeaux*, 315 So.2d at 771, because it is inconsistent with the right to a fair trial to require a defendant to respond to attack from both the prosecutor and his codefendant. *Jung v. State*, 32 Wis.2d 541, 546, 145 N.W.2d 684, 687 (1966), *cert. denied*, 386 U.S. 999, 87 S.Ct. 1321, 18 L.Ed.2d 349 (1967).

In the present case there was no conflict between the defenses that would warrant severance. The antagonism claimed to have inhered in Agin's defense simply did not exist. Agin testified that Miss D. had consented to the sexual acts and that no force or coercion had been involved. If believed, this testimony would have tended to exculpate all three defendants.

In addition, defendants have failed to show how they were prejudiced by the denial of severance or in what manner their trial without severance was unfair. The claim of prejudice resulting from the cross-examination of the victim is not substantiated by the record. The matters elicited by Agin's counsel had already been brought out on direct examination. At most, this testimony created an abstract prejudice that we have previously found insufficient to warrant reversal. *State v. Patriarca*, 112 R.I. at 29, 308 A.2d at 311. In the absence of a showing of substantial prejudice or unfairness we are unable to find that the trial justice abused his discretion in denying severance. *State v. Carsetti*, 111 R.I. at 645–46, 306 A.2d at 168.

We also find no merit in defendant Gibbons's argument that the trial justice erred in refusing to allow his counsel to call Fontaine as a witness. To have called Fontaine, a codefendant, as a witness would have caused him to exercise his right against self-incrimination in the presence of the jury. This plainly would have violated his Fifth Amendment rights. *United States v. Echeles*, 352 F.2d 892, 897–98 (7th Cir. 1965). We find Gibbons's argument that he should have been allowed to comment on Fontaine's election not to testify equally groundless. The Fifth Amendment clearly prohibits any adverse comments by either the prosecution or the trial justice on an accused's decision not to testify. *Griffin v. California*, 380 U.S. 609, 615, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106, 110 (1965); *see State v. Sherman*, 113 R.I. 77, 80–81, 317 A.2d 445, 447–48 (1974). Because the prejudice to an accused is the same regardless of who comments on his failure to testify, it is our opinion that for the same reasons that a prosecutor may not comment on an accused's election to remain silent, counsel for

a codefendant also may not comment. Our primary concerns are the effect the comment is likely to have on the jury and the resulting prejudice to the rights of an accused. The identity of the person making the comment is not material. *United States v. Kaplan*, 576 F.2d 598, 600 (5th Cir. 1978), *cert. denied*, 439 U.S. 1078, 99 S.Ct. 858, 59 L.Ed.2d 47 (1979).[6]

At trial, Miss D. testified concerning her address, the address of a friend, the number of times Gibbons had intercourse with her,[7] and the circumstances surrounding the offer to drive her to the Whitehorse Cafe. The defendant Fontaine sought to impeach her credibility by introducing evidence of her prior statements that he claimed were inconsistent with her testimony. The trial justice ruled that the variance in the testimony was not material to the issues of the case and that the prior statements could not be used to impeach the victim's credibility. The trial justice was clearly correct in his ruling. The use of a prior inconsistent statement for impeachment purposes requires that the witness first testify to facts material to the case. McCormick, *Evidence* § 34 at 67 (2d ed. 1972). In the present case the matters sought to be contradicted were either not material to or not inconsistent with the victim's prior statements. As such they were not grounds for impeachment.

The defendant Gibbons further argues that the trial justice, by interrupting defendant's cross-examination and by excluding certain questions asked by defense counsel, failed to act impartially and thereby prejudiced the jury against him. This argument is groundless. In these instances the trial justice acted well within his authority to exclude irrelevant or otherwise objectionable questions. *See State v. Santos*, R.I., 413 A.2d 58 (1980).

In an attempt to show that Miss D. had consented to the sexual activity, defense counsel sought to introduce evidence of her prior sexual conduct with third persons. The trial justice excluded the evidence of these prior specific acts on relevancy grounds, relying on *State v. Fitzsimon*, 18 R.I. 236, 240, 27 A. 446, 448 (1893), and Super.R.Crim.P. 26.3. The trial justice's reliance on *Fitzsimon* for the proposition that the specific acts of sexual conduct with third parties cannot be used to show that the complainant consented was entirely justified. Evidence of a woman's prior specific sexual acts with persons other than the accused is so tenuously related to whether she consented to sex with the accused that it should be excluded as lacking in probative value and irrelevant to the issue of consent. *McLean v. United States*, 377 A.2d 74, 78 (D.C.App.1977); *see* Ordover, *Admissibility Of Patterns Of Similar Sexual Conduct: The Unlamented Death Of Character For Chastity*, 63 Cornell L.Rev. 90, 106 (1977); *accord, State ex rel. Pope v. Superior Court*, 113 Ariz. 22, 28, 545 P.2d 946, 952 (1976); *People v. Whitfield*, 58 Mich.App. 585, 591–92, 228 N.W.2d 475, 478 (1975).

The defendant Gibbons further claims that evidence of the complainant's prior sexual activity was crucial because the results of the hospital examination indicated that semen was present within Miss

---

**6.** Gibbons cites *De Luna v. United States*, 308 F.2d 140 (5th Cir. 1962), for the proposition *that counsel for a codefendant may comment* on an accused's silence. What the *De Luna* court actually held was that when a codefendant's right not to testify conflicted with a testifying codefendant's right to have the jury consider all relevant inferences to be drawn from the first defendant's silence, separate trials must be held. *Id.* at 141. The rule in *De Luna* applies only when counsel for the testifying defendant has a *duty* to comment, and this duty arises only when the defenses raised are truly antagonistic. *United States v. Lemonakis*, 485 F.2d 941, 952 (D.C. Cir. 1973), *cert.*

denied, 415 U.S. 989, 94 S.Ct. 1586, 39 L.Ed.2d 885 (1974). We view defendant's argument as *merely a variation of the antagonistic-defenses* ground for severance and accordingly reject it for want of truly antagonistic defenses.

**7.** At trial the victim testified that Gibbons had had intercourse with her twice. Shortly after the incident she was unable to recall the exact number of times. The trial justice ruled that the victim's earlier inability to recall was not inconsistent with her present testimony and could not be used to impeach her. We agree with the trial justice's ruling.

D.'s vagina. Insofar as defendant advances this reason as grounds for admitting evidence of sexual conduct that occurred months earlier, his argument is plainly frivolous. The jury heard evidence that the complainant had had sex with her boyfriend the night before she was allegedly raped. This was the only evidence of prior sexual conduct that could have had any bearing on the presence of semen. The trial justice did not err in limiting the evidence of prior sexual acts to this incident.

■ Gibbons also asserts that the trial justice, by recounting Miss D.'s testimony while instructing the jury, invaded the province of the jury, essentially telling them that Gibbons had committed the acts necessary for rape. This assertion is totally without merit; there is no way in which the trial justice's instructions can be so construed. The trial justice's summary of Miss D.'s testimony occurred as part of his explanation to the jurors that they must believe beyond a reasonable doubt that each defendant had committed every element of each crime charged before they could find him guilty. Additionally, the trial justice instructed the jury that it was solely for them to determine the facts of the case and to disregard any references to the facts that he made during the charge if such facts did not coincide exactly with their recollection of the facts. The trial justice did not usurp the jury function.

■ The state called as a witness Dr. Lynn Lowe, the physician who examined Miss D. following the rape. Doctor Lowe testified that he had used certain swabs in examining Miss D. for the presence of semen, that he had sealed these swabs in an envelope, and that he had sent them to the department of toxicology for testing. Richard Bushee, a state toxicologist, testified that he received the envelope the following morning, that it had Dr. Lowe's name on it, and that it was intact when he received it. The defendant Gibbons now argues that on these facts the state has failed to show an unbroken chain of custody of the swabs from the time of the examination to the testing of the swabs by Mr. Bushee. Before

offering as evidence items, such as the swabs, which may not be readily identifiable, the state must establish a foundation showing that the items offered are the same as those that were involved in the case. The foundation "will commonly entail testimonially tracing the 'chain of custody' of the item with sufficient completeness to render it improbable that the original item has either been exchanged with another or been contaminated or tampered with." McCormick, *Evidence* § 212 at 528 (2d ed. 1972). It is our opinion that the testimony of Dr. Lowe and Mr. Bushee regarding the sealing and the receipt of the envelope was sufficient to guarantee that the swabs used during the examination of Miss D. were the same as those swabs introduced at trial and on which Mr. Bushee had found traces of seminal fluid.

■ The defendant Gibbons further claims that he was unduly prejudiced by the trial justice's decision allowing Dr. Lowe to offer his opinion on a matter not requiring expert testimony. The prosecutor had asked Dr. Lowe whether the abrasions on Miss D.'s body were consistent with a person being dragged through an area of underbrush and gravel. Counsel objected to this question on the ground that the evidence concerning the cause of the abrasions was within the comprehension of the jury and that the opinion of Dr. Lowe was therefore unnecessary. The defendant is correct in stating that when the circumstances of the case are such that the jury is as capable of understanding them and drawing the proper conclusions from them as is an expert, there is no need for an expert opinion. *Barenbaum v. Richardson*, 114 R.I. 87, 90–91, 328 A.2d 731, 733 (1974); *see State v. Kozukonis*, 100 R.I. 298, 301, 214 A.2d 893, 896 (1965). Whether the opinion of an expert witness is properly admissible, however, is a matter within the discretion of the trial justice and his decision will not be reversed unless it is clearly wrong. *Morgan v. Washington Trust Co.*, 105 R.I. 13, 18, 249 A.2d 48, 51 (1969).

■ Doctor Lowe testified that Miss D. had "multiple long, straight line, linear

abrasions or scrapes on her back, * * * buttock, * * * shoulders, * * * [and] abdomen" that were consistent with being dragged over the ground. Although an abrasion is not the sort of injury that is beyond the comprehension of an ordinary juror, it is our belief that Dr. Lowe, by virtue of his training and his personal observation of the injuries, was more capable than the jurors of drawing a correct conclusion regarding the possible manner in which the abrasions had been caused and could give his opinion on the matter. The question may be close in this case, but on the evidence before us we are unable to say that the trial justice was clearly wrong, and thus we may not reverse his ruling.

■ Relying on *State v. Jenison*, R.I., 405 A.2d 3 (1979), Gibbons argues that the grand jury that indicted him was unconstitutionally composed. Because defendant did not raise this issue at trial, it is not now properly before us. *State v. Cline*, R.I., 405 A.2d 1192, 1208–09 (1979); *State v. Quattrocchi*, 103 R.I. 115, 117, 235 A.2d 99, 101 (1967); Super.R.Crim.P. 12(b)(2).

■ Additionally, defendant Gibbons claims that the trial justice should have granted him a new trial on the ground that the jurors, who had been allowed to return home for the night during their deliberations, may have been prejudiced against him by a television news story about a rapist in Cranston. The trial justice denied the motion for a new trial, stating that the proper method of raising the issue of the effect of the news story would have been by a motion for a mistrial rather than for a new trial. The trial justice's ruling was correct. *State v. Palmigiano*, 115 R.I. 166, 168–69, 341 A.2d 742, 743 (1975).

■ Finally, Gibbons argues that the verdicts on the rape and kidnaping charges were inconsistent and that the form given to the jury was prejudicial because it did not provide a space in which the jurors could indicate that they disagreed on the matter of guilt. We find no merit in either argument. The form given to the jurors listed defendants' names, the crimes with which they were charged, and provided blank spaces in which the verdict could be indicated. The form also contained an admonition that the jurors pay close attention to the trial justice's instructions, particularly those concerning the state's burden of proving guilt beyond a reasonable doubt on each charge against each defendant. We find nothing improper with the use of such a form, especially in cases in which there are multiple defendants charged with multiple offenses.

■ The defendant Gibbons's argument that the not-guilty verdict on the kidnaping charge is "not capable of logical reconciliation" with the findings of guilt on the other two charges is utterly without support either in logic or in the law. The cases cited by defendant refute his argument that his convictions for the sexual offenses must be reversed because he was acquitted of kidnaping. In those cases the courts held that the confinement, detention, or asportation that was incidental to or facilitated the commission of a crime such as rape or robbery could not support a separate charge of kidnaping, even though it may have fallen within the literal definition of kidnaping. *See People v. Daniels*, 71 Cal.2d 1119, 1134, 459 P.2d 225, 234, 80 Cal.Rptr. 897, 906 (1969); *People v. Levy*, 15 N.Y.2d 159, 164, 204 N.E.2d 842, 844, 256 N.Y.S.2d 793, 796, *cert. denied*, 381 U.S. 938, 85 S.Ct. 1770, 14 L.Ed.2d 701 (1965). None of these courts held, as defendant seems to contend, that kidnaping merged, as a matter of law, with either rape or robbery. *See People v. Levy*, 15 N.Y.2d at 165, 204 N.E.2d at 844, 256 N.Y.S.2d at 796 (kidnaping may be established in addition to other crimes). It is only when the acts supporting a kidnaping conviction are integral to the commission of another offense that the conviction for kidnaping may require reversal.

■ The reasoning of these cases, however, does not help defendant Gibbons because the jury acquitted him of kidnaping. We are also unable to find any merit in defendant's contention that the offenses of kidnaping and rape merged under the standard enunciated in *State v. Boudreau*,

113 R.I. 497, 503, 322 A.2d 626, 629 (1974). In our opinion, the crime of kidnaping is distinct from both rape and the abominable and detestable crime against nature.

The defendant Agin urges us to treat his appeal from the judgments of conviction as an appeal from a denial of an application for postconviction relief so that we might consider his claim that he was deprived of his right to the effective assistance of counsel. We decline to reach the merits of defendant's claim.

We have recently stated that the matter of the competency of trial counsel is more properly cognizable in a proceeding for postconviction relief than on direct appeal. *State v. Freitas*, R.I., 399 A.2d 1217, 1219 (1979); *State v. Levitt*, 118 R.I. 32, 39, 371 A.2d 596, 600 (1977). We do not believe that this case raises "the most pressing circumstances" that would allow us to circumvent the postconviction relief procedures and hear the matter on direct appeal. *See State v. Williams*, R.I., 404 A.2d 814, 817 (1979); *Johnson v. Mullen*, R.I., 390 A.2d 909, 911–12 (1978). It is our opinion that *Williams*, in which we treated an appeal as though it were from a denial of postconviction relief, is distinguishable. In *Williams*, we were especially concerned that the defendant might have been paroled before obtaining postconviction relief and that to relegate her to the postconviction remedy would have elevated form over substance. These concerns are not present in the case now before us. The defendant concedes that he is unlikely to be paroled prior to obtaining postconviction relief. We also believe that it is necessary for defendant to comply with the procedures for postconviction relief pursuant to G.L.1956 (1969 Reenactment) § 10–9.1–1 through § 10–9.1–9, as enacted by P.L.1974, ch. 220, § 3, so that if there any review in this court, we shall have the benefit of a full record and a decision of the Superior Court on that specific claim.

Agin further urges us to allow him an opportunity to present arguments on two issues that he did not raise at trial. We have already resolved the argument regarding the constitutionality of G.L.1956 (1969 Reenactment) § 11–10–1 against the defendant. *See* footnote 5, *supra*. Agin also argues that comments made by the prosecutor during the closing argument deprived him of a right to a fair and impartial trial and that the failure of defense counsel to object to the comments was not a "deliberate bypass" of the required procedure. The defendant has failed to persuade us that the trial counsel did not deliberately withhold objection during the prosecutor's statement. He is therefore precluded from raising the matter for the first time on appeal. *State v. McGehearty*, R.I., 394 A.2d 1348, 1352 (1978).

The defendants' appeals are denied and dismissed, the judgments of conviction are affirmed, and the case is remanded to the Superior Court.