(No. 22674.—<span class="redacted"></span>

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* EARL McMAHON, Plaintiff in Error.

*Opinion filed December 19, 1934—Rehearing denied Feb. 7, 1935.*

EDWARD S. KING, for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, HENRY E. SEYFARTH, and JOHN T. GALLAGHER, of counsel,) for the People.

Mr. JUSTICE ORR delivered the opinion of the court:

Earl McMahon, also known as Jimmie Glennon, was arrested and indicted for the crime of possessing a machine gun. He waived a jury trial and was found guilty by the criminal court of Cook county and sentenced to the

penitentiary for a term of from one to ten years. By this writ of error he seeks reversal of the judgment, urging that the statutory elements of the crime, relating to the description of the machine gun and his possession thereof, were not proved by competent evidence beyond a reasonable doubt.

In May, 1933, McMahon became a roomer and boarder in the home of George Nischwitz, in Bellwood, a suburb of Chicago. He was in the habit of absenting himself from this rooming house at frequent intervals. While there he occupied a rear bed-room allotted to him on the first floor. On the night of January 5, 1934, he returned to the Nischwitz home after an absence, bringing with him two men, named Klutas and Stroud. He asked Nischwitz if the two men could stay at the place, and they were granted permission to do so. On the afternoon of January 6 the police raided the Nischwitz home and placed McMahon, Klutas and Stroud under arrest. The premises were searched at that time and an automatic pistol and a cased machine gun, with magazine, were found in a closet of the room regularly occupied by McMahon. In a front bed-room down-stairs, occupied the night before by Klutas, the police found two automatic pistols, a machine gun and an automatic rifle. In the case holding the machine gun, in the rear bed-room, were found a set of 1933 Missouri automobile license plates numbered 507968. McMahon drove a Ford sedan bearing 1933 Missouri license plates numbered 536451. The police had a warrant for Klutas, who was wanted in Milwaukee, while Stroud was an escaped convict from an Indiana prison. McMahon had been paroled from the Pontiac Reformatory some years ago, where he was serving a term for burglary.

In McMahon's behalf it is first argued that the People failed to prove that the machine gun introduced in evidence filled the specifications contained in the statute making it a crime to possess a machine gun having certain

characteristics. (Smith's Stat. 1933, chap. 38, par. 414a.) During the trial the defendant at no time objected to any testimony which treated the weapon as one of the prohibited type. When the Thompson sub-machine gun, with magazine attached, was offered in evidence, the only objections made were, in substance, that it had not been connected up with the defendant, was not shown to be in his possession and was not established in such a way as to be binding upon him. No objection was made that the exhibit offered was not a machine gun. On the contrary, counsel for McMahon repeatedly referred to it as a machine gun in questioning the witnesses and made no objection to like references by opposing counsel. The gun was admitted in evidence and bore an inscription on its side, reading: "Thompson sub-machine gun, caliber 45; Automatic Colt cartridges manufactured by Colt Patent Firearms Mfg. Co., Hartford, Conn., U. S. A. Model of 1921, No. 6685." A police check-up disclosed that it was the proceeds of a burglary at Waukegan, Illinois. Under these circumstances the point now made is without merit.

The remaining points briefed and argued all relate to the weight or sufficiency of the evidence, largely on the question of failure to prove McMahon's possession of the machine gun beyond a reasonable doubt. The People endeavored to couple McMahon with the machine gun in two ways: First, by evidence showing that he occupied the bed-room in which the gun was found; and secondly, by evidence that the automobile license plates found in the case with the machine gun were in McMahon's possession. Under the circumstances the People were compelled to call Nischwitz as their witness, although it is apparent that he tried to give as much aid and comfort to McMahon as he could without connecting himself too closely with the armament found in his house. The record is conclusive that before the night of January 5 the machine gun was not in the house. The weapon must have been brought in by

McMahon, Klutas and Stroud, or by one of them, on that night. Nischwitz said that McMahon slept up-stairs that night while Klutas and Stroud stayed down-stairs. A daughter of Nischwitz testified that she knew of her own knowledge that Klutas occupied the back bed-room down-stairs, although she did not state how she obtained this direct knowledge. She only knew McMahon was up-stairs because her father told her so when she came in late that night. Furthermore, she did not know the location of Mc-Mahon when he was placed under arrest. McMahon denied either owning, possessing or knowing anything about the machine gun or the license plates found with it. He did not deny the testimony of an officer that he had admitted the ownership of the automatic pistol found in the rear bed-room, or that he had requested the officer to get his coat and hat out of the same closet where the machine gun had been found. He claimed to have slept up-stairs the night before the raid, but admitted that he had, as a roomer, been assigned the rear bed-room down-stairs, which he always used. He admitted using the names of Mc-Mahon and Glennon, and at first said he was employed as a business agent for a florists' union while staying at the Nischwitz home, but later was compelled to admit that this was not true and that he had not been employed by anyone for a year before his arrest. Johnson, a police officer, testified that he found and arrested McMahon in the rear bed-room down-stairs. When he was to be taken away from the house he requested Johnson to get his hat and overcoat, telling the officer, at the time, the two articles would be found in the closet of the rear bed-room down-stairs. Nischwitz admitted that he became very excited when the officers came and could give no coherent account of what took place thereafter. The license plates on Mc-Mahon's automombile and the plates discovered in the machine gun case were found to be issued on two different automobiles at the same street address in University City,

Missouri. The set on McMahon's automobile was issued to him under the name of J. R. Glennon, the other set to R. C. Asher. After a review of the record we are satisfied that the trial court was fully warranted in finding McMahon guilty of the charge beyond all reasonable doubt.

McMahon claims that a new trial should have been granted on the ground of newly discovered evidence. To this end he proffered evidence to establish that Asher was an actual person and that the plates found with the machine gun were issued to Asher. While it was shown by affidavits and other documents that Asher was killed in February before the start of the trial, these facts did not constitute sufficient reason for granting a new trial. Even if the proffered evidence had been before the court for consideration during the trial the outcome would have been the same. The circumstances surrounding the Asher license plates, which were so damaging to McMahon, were, that they were found in the machine gun case with the gun and that they were registered from the same address as the license plates on McMahon's automobile. The possession of the Asher plates, coupled with McMahon's obtaining his own plates under an alias from the same address, were circumstances the effect of which could not be lessened by the fact that a person by the name of Asher had actually existed. A second reason advanced for granting a new trial was an affidavit from Stroud (who also went under the name of Dietrich) that he and Klutas were the possessors of the machine gun in question on January 6. Stroud, at the time he made this affidavit, was in an Indiana prison, allegedly in solitary confinement and beyond the reach of McMahon prior to the trial. Granting that Stroud would have testified in accordance with his statements in the affidavit, the result on a new trial would not have been different, as his antecedents were such as to warrant the court in disregarding his testimony. To warrant a new trial for

newly discovered evidence the new evidence must deal with independent facts or circumstances controlling in character of which no evidence has been introduced. Cumulative evidence to warrant a new trial must be conclusive, necessarily leading to a change in the result of the trial. *People v. Pueschell*, 337 Ill. 84.

The judgment is affirmed. *Judgment affirmed.*