THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JAMES HICKS, JR., Defendant-Appellant.

Third District   No. 82—83

Original opinion filed January 11, 1983.—Rehearing denied March 2, 1983.—
Modified opinion filed March 2, 1983.

Robert Agostinelli and Gary Hicks, both of State Appellate Defender's Office, of Ottawa, for appellant.

Edward F. Petka, State's Attorney, of Joliet (John X. Breslin and Kenneth A. Wilhelm, both of State's Attorneys Appellate Service Commission, of cousnel), for the People.

PRESIDING JUSTICE BARRY delivered the opinion of the court:

Defendant appeals from convictions and sentences imposed by the circuit court of Will County upon jury verdicts finding him guilty of rape, devious sexual assault and heinous battery. (Ill. Rev. Stat. 1979, ch. 38, pars. 11—1, 11—3, 12—4.1.) At the time of the offenses defendant was 15 years old. The case was transferred from the juvenile division to the adult division after a hearing conducted pursuant to section 2—7(3) of the Juvenile Court Act. Ill. Rev. Stat. 1979, ch. 37, par. 702—7(3).

In the afternoon of March 19, 1981, nine-year-old Erica Smith was home alone practicing her violin. She was hungry, so she put a couple of hot dogs and water in a "Corning Ware" pan on the stove to cook. Erica returned to her violin and then heard a knock on the apartment door. When there was no response to her inquiry about who was there, Erica opened the door a few inches and observed the defendant.

The defendant first asked if Erica's parents were home and then whether she had brothers and sisters. Erica said "no" to both questions. Then the defendant pushed the door open, took a steak knife and scraped it across Erica's neck, and pushed her into her bedroom. There, he made her pull down her pants and tried to force his penis into her vagina. It wouldn't fit, so he put it in her mouth.

Erica's next recollection was awakening on her parents' bed in pain and her sweater wet. Erica phoned the police and tried to reach her mother at work. Her mother showed up in a few minutes and Erica was taken to the hospital.

The hot dogs and pan were found on the floor of Erica's room near the bed. Erica's body was severely burned, primarily on her chest, abdomen and upper right arm. Her right breast bud was destroyed by burning. Her face and eyes were swollen and bruised, as were the insides of her mouth and throat. Swelling and irritation also were noted in the genitalia area.

The defendant was apprehended by the police on April 1 and subsequently formally charged by indictment on July 22, 1981. The indictment was in six counts—home invasion, deviate sexual assault (two counts), rape, heinous battery and armed violence.

The defendant's two-week trial, including jury selection, began on October 14, 1981. One count of deviate sexual assault and the armed violence charge were dismissed with prejudice on the State's motion at the close of its case-in-chief for lack of supporting evidence. At the close of all evidence and arguments of counsel, the jury deliberated and returned verdicts of guilty on each of the four remaining counts.

Convictions were entered accordingly. The State then moved to *nolle prosequi* the home invasion count for failure to allege in the

charging instrument "that the defendant had acted without authority." The motion was granted and the court proceeded to a sentencing hearing on the remaining convictions. Upon consideration of testimony, psychologists' reports and the recommendations of counsel, the court imposed prison sentences of 20 years each for heinous battery, deviate sexual assault and rape, the latter two sentences to be served consecutively with each other and concurrently with the sentence for heinous battery.

On appeal, the defendant raises two issues: (1) whether boiling water is a "caustic substance" as that expression is used in the heinous battery statute; and (2) whether the trial court erred in failing to express its opinion at the sentencing hearing that consecutive sentences were necessary for the protection of the public.

■ The sole evidence of the cause of Erica Smith's severe body burns was the fact that the pan of hot dogs, which Erica had earlier placed in water on the stove to cook, was found with only the hot dogs remaining beside her bed, and Erica's sweater was wet when she awoke after the incident. Clearly, the inference was that boiling hot dog water had been poured on the little girl's body.

Erica's physician testified that in his professional opinion boiling water is a caustic substance and such could have caused her burn injuries. The defendant contends that whether or not boiling water is a caustic substance is not an appropriate issue for which expert opinion is admissible. Rather, it is a question of law to be determined by the court by applying rules of statutory construction. We agree.

In the absence of evidence to the contrary, words used in a statute are to be given their ordinary and popularly understood meanings. (*Winks v. Board of Education* (1979), 78 Ill. 2d 128, 398 N.E.2d 823.) The word "caustic" is defined in Webster's Third New International Dictionary as "capable of destroying the texture of anything or eating away its substance by chemical action: CORROSIVE." Webster's Third New International Dictionary 356 (1971).

The properties of water cannot be said to fit within the dictionary definition of "caustic." While certainly water is capable of burning by thermal—as opposed to chemical—action when heated to the boiling point, this is true as well of a wide range of noncaustic substances which require a certain amount of heat to alter their physical state from liquid to gas or, indeed, from solid to liquid.

We do not find that the legislative intent was to include all such substances within the heinous battery statute. The fact that our statute is restricted to "caustic substances" indicates to us that the legislators intended that the enhanced penalty be applied only to cases wherein

the battery is performed with the use of lye, hydrochloric acid and such similar substances. This construction incorporates the dictionary definition of "caustic" and comports with the "ordinary meaning" rule of statutory construction. Moreover, if the legislature had intended to include "boiling or scalding liquid" within the meaning of the statute, we believe that that body was capable of doing so, by incorporating such language into the statute.

■ In the instant case the State did not attempt to establish that any corrosive chemicals, as such, were to be found either in the hot dog pan or on Erica's sweater. The sole evidence that Erica's burns were caused by a "caustic substance" was presented by the State's expert witness who stated that boiling water was a caustic substance. We hold that boiling water is not a caustic substance, as a matter of law. Accordingly, the State failed to prove an element of the heinous battery statute and the defendant's conviction therefor must be vacated. However, since each element of aggravated battery, a lesser-included offense of heinous battery, was proved beyond a reasonable doubt, we exercise our supervisory power (87 Ill. 2d R. 615(b)(3)) to reduce the degree of the offense to aggravated battery (*People v. Coleman* (1979), 78 Ill. App. 3d 989, 398 N.E.2d 185) and remand this cause for sentencing on the reduced offense.

■ The defendant's second issue on appeal concerns the validity of the trial court's imposition of consecutive sentences for rape and deviate sexual assault.

At the sentencing hearing, Erica's mother testified about her daughter's injuries. She stated that Erica had exhibited signs of emotional disturbance following the incident. Erica was unable to look at her body with its grotesque scarring. She cried excessively and dreaded the prospect of having to disrobe to shower in junior high school physical education classes. Erica had to wear special burn garments covering her torso and arms to protect the skin grafts and scar tissue as it formed. Erica had not been told that her right breast would never develop, and the extent of damage to her left breast bud had not been medically determined.

Also admitted into evidence at the sentencing hearing was a psychological report prepared by Dr. William Hilger in connection with the hearing to determine whether the defendant should be tried as a juvenile or as an adult. The report revealed that the defendant had a history of bizarre sexual behavior, exposing himself at school and to strangers, and soliciting others to participate in various sex acts with him. His episode of antisocial conduct had led to inpatient hospitalization for psychiatric treatment and had caused his family to change residences

from time to time. The defendant refused to acknowledge his problems and the doctor was of the opinion that "long-term confinement and intensive psychotherapeutic treatment" would be necessary before the defendant could anticipate being sufficiently rehabilitated to reenter society.

At the conclusion of all evidence and arguments of counsel, the trial court summarized the evidence and imposed sentence, stating for the record:

> "The court believes--I am not Soloman [sic], but we do have to have more than the minimum for this offense because it would have been then a useless transfer act to consider a long time therapy if he were to be convicted for this court to say all he deserves is six because that would have been the approximate length of time that he would have been in the juvenile department.
>
> So, somewhere between the six and thirty is a figure which this court must arrive at, recognizing that the defendant according to our present sentencing provisions is going to be able to earn good time credits on a day for day basis, therefore upon this court considering all the evidence which was presented at the trial, the evidence presented at this sentencing hearing, the presentence investigation report including the report of Dr. Hilger, as well as the statement dated February 3rd from the Youth Counselor of Kane County Youth Home where the defendant has been confined for approximately the past ten months, taking into account the factors in aggravation and mitigation, the age of the defendant and the nature of the offense or offenses that were committed, this court sentences the defendant, James Hicks, Jr. on the conviction of rape to a term of 20 years in the Department of Corrections; for the offense of deviate sexual assault, the defendant is sentenced to a 20 year sentence in the department of corrections said sentence in view of the heinous battery and injury that was inflicted upon the victim Erica Smith is to be consecutive to the rape sentence and on the conviction of heinous battery, the defendant is to be sentenced to serve a period of 20 years, said sentence to be consecutive--strike that, to be concurrent with prior consecutive sentences."

It is defendant's position on appeal that his sentences cannot stand because the trial court failed to recite its opinion "that consecutive sentences were necessary to protect the public." (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—4(b).) Specifically the section at issue reads:

> "This court shall not impose a consecutive sentence unless,

having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant, the basis for which the court shall set forth in the record."

The defendant's argument is premised on a finding that the sentencing statute contains mandatory, rather than permissive language.

In *People v. Davis* (1982), 93 Ill. 2d 155, an analogous issue was raised on grounds that the sentencing court had failed to specify the factors in aggravation and mitigation which led to its sentencing determination. (Ill. Rev. Stat. 1979, ch. 38, pars. 1005—4—1(c), 1005—8—1(b).) Our supreme court stated that "the pronouncement of sentence is at the heart of the judicial function. A construction which would hold sections 5—4—1(c) and 5—8—1(b) [of the sentencing act] to constitute a mandatory requirement would clearly render the provisions an unconstitutional invasion of the inherent power of the judiciary." In order to find the statute constitutionally valid, the court read "shall," in the context of the two sections there at issue, as permissive rather than mandatory. *People v. Davis* (1982), 93 Ill. 2d 155, 162.

Accordingly, because the defendants in *Davis* had not requested that the sentencing court specify its reasons for the sentences given, the reviewing court held that defendants had waived their rights to such statements.

Similarly, in the present case the defendant failed to request that the trial court express its opinion for the record that the defendant's consecutive sentences were required for the protection of the public, as provided in section 5—8—4(b). The *Davis* court's reasoning applies with equal force here. We hold that section 5—8—4(b) is directory, rather than mandatory, and is not, therefore, an unconstitutional invasion by the legislature of the judiciary power. Accordingly, we conclude, as did the *Davis* court, that the defendant herein has waived his right to the sentencing court's pronouncement as provided by that section.

For the foregoing reasons, the defendant's conviction for heinous battery is reduced to aggravated battery and the cause is remanded for resentencing on that offense. In all other respects, the defendant's convictions and sentences are affirmed.

Affirmed in part, reversed in part, and remanded.

ALLOY and HEIPLE, JJ., concur.