(Nos. 58140, 58186 cons.—

# THE PEOPLE OF THE STATE OF ILLINOIS, Appellant and Appellee, v. JAMES HICKS, JR., Appellee and Appellant.

*Opinion filed April 4, 1984.*

SIMON, J., specially concurring.

Neil F. Hartigan, Attorney General, of Springfield, and Edward Petka, State's Attorney, of Joliet (Mark L. Rotert, Marcia L. Friedl, and Michael B. Weinstein, Assistant Attorneys General, of Chicago, and John X. Breslin and Kenneth A. Wilhelm, of the State's Attorneys Appellate Service Commission, of Ottawa, of counsel), for the People.

Robert J. Agostinelli, Deputy Defender, and Gary Hicks, Assistant Defender, of the Office of the State Appellate Defender, of Ottawa, for appellee.

JUSTICE UNDERWOOD delivered the opinion of the court:

The charges involved in this criminal case originated with the filing of a delinquency petition in the circuit court of Will County against 15-year-old James Hicks, Jr. The matter was subsequently transferred to the adult division for prosecution of Hicks as an adult (Ill. Rev. Stat. 1979, ch. 37, par. 702—7(3)), and he was indicted on various charges including deviate-sexual assault, rape and heinous battery. He was found guilty of these offenses in a jury trial and later sentenced to a term of 20 years' imprisonment for rape, a consecutive 20-year

term on the deviate-sexual-assault conviction, and a concurrent 20-year term for the heinous battery. On appeal, the appellate court reduced the heinous-battery conviction to aggravated battery and remanded the cause to the circuit court for resentencing on that offense. In all other respects the appellate court affirmed. (112 Ill. App. 3d 303.) We allowed the petitions of both the State and the defendant for leave to appeal.

The State argues that the appellate court erred in reducing the defendant's conviction of heinous battery to aggravated battery. The defendant urges affirmance of this reduction to aggravated battery, but claims that such reduction requires remand for resentencing on all convictions, not merely the conviction which has been reduced. The defendant also claims that the trial court erred in imposing consecutive sentences because the trial court did not specifically find, nor does the record show, that such a sentence was necessary to protect the public as is required by the applicable sentencing statute.

The facts are not disputed in this court. During the afternoon of March 19, 1981, the nine-year-old victim (Erica) was alone in her family's apartment practicing her violin. She became hungry and placed hot dogs in a pan of water, putting the pan on the stove. While the pan was heating, Erica heard a knock at the apartment door. She answered the door and found standing there an individual whom she later identified as the defendant.

After Erica, in response to defendant's questions, disclosed that she was alone, the defendant entered the apartment. He located a knife which he used to repeatedly scrape across her neck. He then forced her into her bedroom, where he made her remove her pants. After unsuccessfully attempting to force his penis into her vagina, the defendant forced his penis into Erica's mouth. Her next recollection was awakening on her parents' bed in pain, with her sweater wet. The pan in which she was

cooking the hot dogs was in her room on the floor near the bed. The hot dogs remained in the otherwise empty pan.

The medical testimony established that Erica had been beaten about the face, bruised and repeatedly cut about the throat, and that a blunt object had been thrust into her mouth, throat and pubic area. Her body had been severely burned, primarily on her chest, abdomen and upper right arm. The burns destroyed Erica's right breast bud, and perhaps the left one, also, and required substantial debridement and skin grafting. The result has been considerable permanent discoloration, scarring and disfigurement. The burns had been caused by a liquid substance, and the clear inference from the evidence was that boiling water from the pan being used to cook the hot dogs had been poured over Erica's upper body.

The appellate court held that as a matter of law these facts do not constitute heinous battery as defined in the applicable statute. The pertinent section provides:

> "A person who, in committing a battery, knowingly causes severe and permanent disability or disfigurement by means of a caustic substance commits heinous battery." (Ill. Rev. Stat. 1979, ch. 38, par. 12—4.1(a).)

There is no dispute that a battery was committed which resulted in severe and permanent disability and disfigurement. The question is whether boiling water as here involved constitutes a "caustic" substance within the meaning of the statute.

We note, initially, that this issue was not specifically presented by the defendant in the trial court. While the sufficiency of the evidence was generally raised in defendant's post-trial motion, that motion did not advise the trial court of the contention now made. To the contrary, at no time during the trial did defendant question the applicability of the heinous-battery statute to these facts. Erica's primary treating physician testified without objection that her

burns had been caused by a caustic substance and that in his professional opinion boiling water is a caustic substance. Instead of the issue now raised, the defense focused upon the identity of the assailant.

It is well established that issues not raised in the trial court are generally considered waived on appeal. (See, *e.g., People v. Garcia* (1983), 97 Ill. 2d 58, 86; *People v. Holloway* (1981), 86 Ill. 2d 78, 91.) In analogous circumstances, this court has refused to accept a defendant's contention that a weapon was not a machine gun as defined by a criminal statute when it had been treated as such throughout the trial proceedings. (*People v. McMahon* (1934), 359 Ill. 97, 98-99.) Consequently, we would be justified in finding that this issue has been waived. However, because the waiver issue was not urged by the State in the appellate court, and because the issue may involve an essential element of the prosecution, we address it on the merits. See 73 Ill. 2d R. 615(a); *People v. Walker* (1955), 7 Ill. 2d 158 (the State's failure to prove an essential element can be raised for first time on appeal).

The offense of heinous battery was created relatively recently in conjunction with the enactment of substantial revisions of the criminal laws of Illinois, commonly referred to as Class X legislation. We have thoroughly reviewed the legislative history of this enactment and have found no guidance to assist us in our determination of whether boiling water is intended to qualify as a caustic substance under the terms of this statute.

We find the best indication of the breadth of the statute to be the definition of the word "caustic" itself. Where the terms of a statute are not defined by the legislature, courts will assume that they were intended to have their ordinary and popularly understood meanings, unless doing so would defeat the perceived legislative intent. (See, *e.g., People v. Fink* (1982), 91 Ill. 2d 237, 240.) Webster's Third New International Dictionary defines "caustic," as pertinent here,

as follows:

> "[C]apable of destroying the texture of anything or eating away its substance by chemical action: corrosive: as (a): capable of destroying animal or other organic tissue *** (b): strongly alkaline." (Webster's Third New International Dictionary 356 (1971).)

Significantly, it is also indicated that the word caustic is of Latin and Greek derivation, the original words meaning "to burn."

There can be no dispute that Erica was, in fact, burned and that her body's tissue was destroyed. However, the defendant seeks to distinguish between burns caused by thermal action, such as those here, and those caused by chemical action, defined by the defendant as burns caused by acids. The defendant argues that boiling water burns by thermal as opposed to chemical action, and thus does not qualify as a caustic substance under the terms of the statute. However, "chemical action" as used in the definition of caustic is defined as the "molecular change produced in any substance through the action of *heat*, light, electricity, or another chemical." (Emphasis added.) (Blackiston's Gould Medical Dictionary 257 (4th ed. 1979).) Thus, the distinction between thermal burns and other burns relied upon by the defendant as an integral part of his claim is a distinction without a difference under the circumstances here. Burns caused by heat, as well as those caused by other means, are the result of chemical action.

Our conclusion is even more strongly supported by other definitions of "caustic," such as Funk & Wagnall's New Comprehensive International Dictionary 221 (Encyclopedic Ed. 1977) which defines "caustic" simply as "capable of corroding or eating away tissues; burning; corrosive," without reference to the source of the injury. Certainly this definition encompasses boiling water.

While we concede that the heinous-battery statute could have been more clearly drafted to specifically address the

distinction here highlighted, we do not believe the legislature's failure to do so obscures the purpose and application of the statute under these circumstances. We believe it clear that boiling water is included within the statutory context as a caustic substance, and thus the defendant was properly convicted and sentenced under the heinous-battery section. Accordingly, the appellate court erred in reducing this conviction to one of aggravated battery. In view of this holding, it is unnecessary for us to consider the defendant's contention that he is entitled to be resentenced on all counts herein.

Finally, the defendant contends that the trial court erred in imposing consecutive sentences under these circumstances because the sentencing court did not specifically find, nor does the record disclose, that a consecutive sentence is required to protect the public from further criminal conduct by the defendant.

Generally, multiple sentences for offenses which were committed as a part of a single course of conduct during which there was no substantial change in the nature of the criminal objective are to be imposed to run concurrently. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—4(a).) An exception to this general rule exists, however, where, as here, one of the offenses is a Class X or Class 1 felony and the defendant inflicted severe bodily injury, in which event it is within the sentencing court's discretion to impose consecutive sentences. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—4(a).) If consecutive sentences are imposed, the sentencing is governed by section 5—8—4(b) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—4(b)), which provides:

> "(b) The court shall not impose a consecutive sentence unless, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the

defendant, the basis for which the court shall set forth in the record."

Again we note that this matter was not properly presented to the trial court. The defendant did not request a specific finding of the sentencing court relative to the protection of the public, nor did the defendant complain that a basis for the required statutory finding was not sufficiently articulated. In *People v. Davis* (1982), 93 Ill. 2d 155, this court was presented with an identical argument with reference to the requirement that the trial court state its reasons for imposing a particular sentence (Ill. Rev. Stat. 1979, ch. 38, pars. 1005—4—1(c), 1005—8—1(b)). In that case we held that the mandatory language of the statute must be read as permissive in order to preserve the constitutionality of the statute in light of the separation of powers clause of the Illinois Constitution of 1970. As a result, the statutory requirement was subject to waiver and, in fact, had been waived by the defendants' failure to request a statement of reasons for a particular sentence.

The holding and rationale of the *Davis* case are controlling here. We find that the statutory requirement that the court "shall set forth in the record" the basis for the court's determination that such sentences are "required to protect the public from further criminal conduct by the defendant" is permissive rather than mandatory, and has been waived.

Even so, we feel compelled to comment upon the sentencing court's lengthy observations and explanations at the time of sentencing. In *People v. Pittman* (1982), 93 Ill. 2d 169, this court interpreted the exact statutory provision now before us relating to the requirements for imposing consecutive sentences (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—4(b)). There, we held that a trial court's imposition of consecutive sentences was not in and of itself sufficient to imply that the court was of the opinion that the consecutive term was necessary for the protection of the

public as required by the statute. (93 Ill. 2d 169, 177.) However, we further held and here reiterate that, although such a course may be the better practice, the trial court need not recite the language of the statute in reaching its determination. (93 Ill. 2d 169, 177-78.) "What is required is that the record show that the sentencing court is of the opinion that a consecutive term is necessary for the protection of the public." 93 Ill. 2d 169, 178.

In sentencing the defendant here, the circuit court reviewed a number of factors which it determined mandated the imposition of consecutive sentences. Those factors included the evidence establishing the aggravated nature of these crimes and a presentence investigation containing a psychological evaluation indicating serious psychological problems and referring to previous bizarre sexually-related behavior. Significantly, the defendant's psychological evaluation noted a marked potential for future criminal behavior, absent long-term confinement and intensive treatment. The sentencing court specifically noted the need for long-term psychotherapy and the threat which the defendant posed to society. After carefully reviewing these factors and others, the circuit court sentenced the defendant to a term of 20 years' imprisonment on the rape conviction, a consecutive 20-year term of imprisonment on the deviate sexual assault conviction, and a concurrent 20-year term of imprisonment on the heinous battery conviction.

We have repeatedly emphasized the undesirability of a reviewing court simply substituting its judgment or preference as to punishment for that of the sentencing court. The trial judge is ordinarily best situated to tailor a sentence or other disposition to the needs of the case. He balances the appropriate factors in imposing sentence, and the exercise of this discretion should not be altered upon review absent an abuse of that discretion. (See, *e.g., People v. Pittman* (1982), 93 Ill. 2d 169, 178; *People v. Vance* (1979), 76 Ill. 2d 171, 182; *People v. Perruquet* (1977), 68

Ill. 2d 149.) Here, the record clearly indicates that the sentencing judge was convinced in light of all of the facts and circumstances before him that a consecutive term was necessary for the protection of the public. The statute requires nothing more.

For the reasons stated, we reverse that portion of the appellate court's judgment reducing the defendant's conviction of heinous battery to aggravated battery and remanding this cause for resentencing on that offense; the balance of the appellate court's judgment is affirmed. The circuit court's judgment is affirmed in all respects.

> *Appellate court affirmed in*
> *part and reversed in part;*
> *circuit court affirmed.*

JUSTICE SIMON, specially concurring:

I agree with the court's conclusion that boiling water is included within the category of caustic substances as used in the heinous-battery provision, section 12—4.1(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 12—4.1(a)), and therefore I concur in the reversal of the appellate court's holding reducing the conviction from heinous battery to aggravated battery. I also agree that the imposition of consecutive sentences was appropriate in this case, but for reasons different than those stated by the majority.

Section 5—8—4(b) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—4(b)) provides:

> "(b) The court shall not impose a consecutive sentence unless, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant, *the basis for which the court shall set forth in the record.*" (Emphasis added.)

The trial judge complied with the requirements of sec-

tion 5—8—4(b). He reviewed in detail the factors which he believed warranted the imposition of consecutive sentences, emphasizing the results of a psychological evaluation contained within the report of the presentencing investigation. The court noted the defendant's history of similar behavior and the need for intensive long-term psychotherapy and long-term confinement in light of the threat posed by defendant to society (101 Ill. 2d at 375). The trial judge could not have more directly addressed the issues raised by section 5—8—4(b) than he did without employing the "magic words" of the statute itself. As the majority appropriately notes (101 Ill. 2d at 375), we have recently stated: "What is required is that the record show that the sentencing court is of the opinion that a consecutive term is necessary for the protection of the public" (*People v. Pittman* (1982), 93 Ill. 2d 169, 178). There is no need to repeat the language of the statute verbatim. (93 Ill. 2d 169, 177-78.) Since I believe that the trial court complied with section 5—8—4(b), I find no reason to reach the holding of this court in *People v. Davis* (1982), 93 Ill. 2d 155, a conclusion with which I disagreed.