NOTICE
Decision filed 09/15/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 240342-U

NO. 5-24-0342

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | White County. |
| | ) | |
| v. | ) | No. 19-CF-96 |
| | ) | |
| BELINDA A. VOGT, | ) | Honorable |
| | ) | T. Scott Webb, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BOIE delivered the judgment of the court.
Justices Cates and Barberis concurred in the judgment.

**ORDER**

¶ 1   *Held*:   We affirm the judgment of the trial court where the defendant was not prejudiced nor denied real justice by the trial court's incomplete Rule 605(a) admonishments because the trial court did not abuse its discretion in its sentencing of the defendant.

¶ 2   The defendant, Belinda A. Vogt, appeals the judgment of the trial court sentencing her to three years' imprisonment in the Illinois Department of Corrections (IDOC). The defendant argues that the trial court failed to properly admonish her pursuant to Illinois Supreme Court Rule 605(a) (eff. Apr. 15, 2024), and that this court should remand the matter to give the defendant the opportunity to file a motion to reconsider sentence. In the alternative, the defendant argues that, if this court finds that the defendant was not prejudiced by the improper admonishment, the trial court abused its discretion in sentencing the defendant, and this court should reduce her sentence. For the following reasons, we affirm the judgment of the trial court.

1

¶ 3                                  I. BACKGROUND

¶ 4      On July 1, 2019, the defendant pled guilty to the charge of unlawful possession of less than

five grams of methamphetamine (720 ILCS 646/60(a) (West 2018)), a Class 3 felony. Pursuant to

the terms of the fully negotiated plea, the defendant was sentenced to 30 months of probation. The

State filed a petition to revoke probation on December 19, 2019, and an amended petition on March

3, 2021. The amended petition alleged various violations of the terms of the defendant's probation.

A revocation hearing was held on May 4, 2022, with the trial court finding that the defendant had

violated the terms of her probation and setting the matter for a sentencing hearing in October 2022.

The trial court ordered the defendant to continue to report to probation before her resentencing and

told her that it would be in her interest to do everything she was supposed to do and stay out of

further trouble. Further, the trial court told the defendant that if she had a drug problem, she needed

to tell her probation officer so that she could get help, and that she should not test positive for

drugs while claiming that she did not have a drug problem.

¶ 5      Prior to her resentencing hearing, the defendant was charged in People v. Vogt, No. 2022-

CF-101 (Cir. Ct. White County), with three methamphetamine-related offenses alleged to have

been committed on May 20, 2022. The defendant was subsequently charged in People v. Vogt,

No. 2022-CF-185 (Cir. Ct. White County), with two aggravated battery offenses alleged to have

been committed on September 24, 2022. In October 2022, the trial court reset the defendant's

resentencing hearing for March 2023. In March 2023, the defendant entered an open plea of guilty

to the Class 2 felony offense of unlawful use of property (720 ILCS 646/35 (West 2022)) in case

number 2022-CF-101, and to the Class 3 felony offense of aggravated battery (720 ILCS 5/12-

3.05 (West 2022)) in case number 2022-CF-185. The trial court advised the defendant that the

sentencing in these two cases could be consecutive to the sentence in this case, but that consecutive

2

sentencing was not mandatory. The trial court set the sentencing hearing on this case and the two other cases for June 23, 2023.

¶ 6     The trial court ordered the preparation of a presentence investigation report (PSI). The PSI and an addendum were completed and provided to the trial court. The PSI included the defendant's family and personal history, including that she left school after completing the tenth grade and that she suffered from anxiety, bipolar disorder, and depression. The PSI further addressed the defendant's health issues, history of sexual abuse at a young age, and her drug and alcohol use. According to the PSI, the defendant began using alcohol and marijuana as a teenager but did not inform probation in 2019 that she had ever used methamphetamine, despite her prior conviction for possessing 5 to 15 grams of methamphetamine. In the PSI addendum, however, the defendant admitted that she had started using methamphetamine at age 18, and had most recently used methamphetamine eight days prior to her interview. The defendant characterized herself as an "occasional, not a regular user."

¶ 7     The PSI also included the defendant's prior adult offenses that included a 2002 conviction for possession of a controlled substance, a Class 4 felony. In that case, her probation was revoked in 2005, and she was sentenced to 18 months in IDOC. In 2015, the defendant was charged with aggravated battery in a public place, but the charge was reduced, and she was found guilty of battery causing bodily harm, a Class A misdemeanor, for which she was placed on conditional discharge and second-chance probation. In 2019, in St. Clair County, the defendant was convicted of possession of between 5 and 15 grams of methamphetamine, a Class 1 felony, for which she received probation. In 2019, while on probation for that offense, she was arrested and charged with possession of methamphetamine in the present case. The defendant's probation in the St. Clair

3

County case was revoked in 2021. Further, she was convicted in 2019, in Madison County, for theft between $500 and $10,000, a Class 3 felony, for which she received probation.

¶ 8      The PSI reported that the defendant's prior performance on probation was poor, noting that she missed probation appointments, missed or refused drug screenings, and tested positive for THC, methamphetamines, and amphetamines on several occasions. The defendant also failed to obtain or complete substance abuse and mental health assessments.

¶ 9      In June 2023, the sentencing hearing was continued so the defendant could attend a substance abuse detoxification program from June 25, 2023, to June 28, 2023. This program sent a letter on June 26, 2023, stating that the defendant was "in the process of" getting on a second substance abuse program's waitlist for a bed and that this waitlist was reported to be three or four weeks. On July 5, 2023, defense counsel reported that the defendant was still waiting for a bed at a facility. At the sentencing hearing eventually conducted in January 2024, neither party reported that the defendant had attended a second program, and the only program mentioned was the detoxification program completed in June 2023.

¶ 10     At a hearing on September 11, 2023, defense counsel informed the trial court that there would be a joint agreement to resolve the sentencing in the defendant's three cases. The trial court reset the sentencing hearing for December 4, 2023, and warned the defendant that if she got into further trouble, "all deals are off." At the hearing on December 4, 2023, the defendant claimed that she had a urinary tract infection and could not provide a urine sample to be tested. The trial court gave her until the end of the day to provide a urine sample at the probation office, and added that if she was unable to provide one, she should return the following day until she was able to provide the sample. The trial court reminded the defendant that the parties had made a deal in which she would receive probation if she tested negative, so the trial court continued the sentencing hearing

4

until December 6, 2023, in order to give the defendant another chance to provide a urine sample to be tested. On December 6, 2023, the defendant arrived in court late, and the trial court noted that she had arrived at probation late on the previous day.

¶ 11　At the next hearing, on December 18, 2023, the State reported that the parties had agreed to continue the sentencing hearing based on receiving conflicting drug test results. The State reported that the probation department had a positive test result. A pretrial services officer also reported to the trial court that they had administered a urine test but that it had to be counted as a negative because "the line is faded." The pretrial services officer told the trial court that a negative urine test could not be sent to a lab. The State reported that the probation office could send another sample to the lab. The trial court reset the sentencing hearing to January 29, 2024, and told the defendant to report to the probation department immediately to provide another sample.

¶ 12　The matter proceeded to sentencing on January 29, 2024. The parties presented no evidence in aggravation or mitigation. Although neither party mentioned the results of any drug test performed after the December 18, 2023, hearing, neither party invoked any agreement involving probation based on negative tests. In requesting that the trial court impose a sentence of incarceration, the State asked the trial court to consider in aggravation the statutory factor of general deterrence. The State argued that the defendant's history of noncompliance with probation and her criminal history as set forth in the PSI, including her commission of additional crimes while awaiting resentencing in the present case, demonstrated that she could not comply with probation. The State also argued that the defendant was eligible for extended-term sentences on all three counts, and asked the trial court to impose three 10-year sentences to be served concurrently.

¶ 13　In response, defense counsel argued that the defendant had successfully completed probation and supervision in other cases and that 10 years was excessive. Counsel pointed out that

5

the defendant had diagnoses for anxiety, bipolar disorder, and depression; experienced post-traumatic stress disorder; suffered sexual abuse as a child; and, had "struggles in her life." Counsel explained that relapses are expected for those who struggle with addiction and that it "take[s] time to correct these conditions." Counsel asked the trial court to impose minimum sentences.

¶ 14 The defendant then made a statement in allocution. The defendant admitted making unspecified "mistakes" but denied making others. She blamed her failure to appear for probation appointments on the COVID-19 pandemic. She said that she was "learning today that drugs ain't the answer." The defendant asked for credit for not using drugs the day before, while also denying that her recent positive drug test was the result of using drugs. She stated she could not explain the positive drug test result, noted that another test had been negative, and denied using drugs. She said that her life was "so messed up," described her transportation problems, and she thanked everyone for what they had done for her.

¶ 15 The trial court did not address the defendant's three cases individually. Prior to imposing sentence, the trial court referenced the statutory factors in aggravation and mitigation (see 730 ILCS 5/5-5-3.1(a), 5-5-3.2(a) (West 2022)). In aggravation, the trial court stated that the defendant's conduct caused or threatened serious harm, but that factor was inherent in the aggravated battery charge. The trial court noted the defendant's criminal history, stating that it had been dealing with her for close to 20 years. The trial court also said that the sentence was necessary to deter others from committing the same crime. The trial court stated that it had no faith that the defendant could comply with probation, given that she had been on probation when she committed the crimes in case numbers 2022-CF-101 and 2022-CF-185.

¶ 16 The trial court continued, noting that the defendant's statement in allocution included some acceptance of responsibility, but that she also blamed her situation on others or other factors. The

6

trial court acknowledged that the defendant had been "dealt a bad hand," but it stated that "there's a lot of people that's been dealt bad hands, and a lot of people figure out a way to deal with that and play the hand they're dealt with and be able to survive in society. You've given me zero indication that you can do that." The trial court stated that it had given the defendant more opportunities than any other defendant and that, "I think whenever you look back and you truly think of this objectively, you'll know the chances you've been given."

¶ 17 The trial court then resentenced the defendant to three years' imprisonment in IDOC in this case. The trial court imposed five-year imprisonment sentences in case numbers 2022-CF-101 and 2022-CF-185. The trial court ordered the five-year sentences to run consecutively to the sentence in the present case, but concurrently with each other.

¶ 18 The trial court ordered that the defendant be taken into custody immediately, and the defendant began creating a disturbance. Between her continued outbursts, the trial court advised her that she had the right to appeal; that in order to appeal, she first had to file within 30 days a motion to withdraw her guilty plea alleging certain errors were committed; that her failure to allege an error in that motion may result in a waiver of her ability to raise that claimed error at a later time; that a transcript of proceedings would be made available to her; that she would be appointed counsel to represent her on her motion to withdraw; that if the trial court granted her motion to withdraw, then anything dismissed as part of the agreement may be reinstated at the State's request; and, that if the trial court denied her motion to withdraw, she would have 30 days from the date of the denial to file a notice of appeal. The trial court then directed her to be escorted from the courtroom.

¶ 19 The defendant did not file any postsentencing motions. A *pro se* letter from the defendant was filed on March 1, 2024, stating, among other things, that she wished to appeal this case, as

7

well as case numbers 2022-CF-101 and 2022-CF-185, and requesting a "lighter sentence." On March 5, 2024, the defendant filed a *pro se* notice of appeal, appellate counsel was appointed, and on June 28, 2024, this court granted the defendant's motion for leave to file a late notice of appeal in this case and the defendant's companion cases. This appeal followed.

¶ 20                                    II. ANALYSIS

¶ 21     The defendant now appeals, arguing that the trial court failed to properly admonish her pursuant to Illinois Supreme Court Rule 605(a) (eff. Apr. 15, 2024), and, therefore, this court should remand the matter to give the defendant the opportunity to file a motion to reconsider sentence. In the alternative, the defendant argues that if this court finds that the defendant was not prejudiced by the improper admonishment, the trial court abused its discretion in sentencing the defendant, and that this court should reduce her sentence.

¶ 22                                  A. Admonishments

¶ 23     The defendant argues that after the trial court resentenced her in this case and imposed sentence for her two open guilty pleas in her other cases, the trial court informed her that she had a right to appeal and that in order to do that she had to first file a motion to withdraw her guilty plea. The defendant contends that the trial court then admonished her as to how to challenge a negotiated guilty plea pursuant to Illinois Supreme Court Rule 605(c) (eff. Apr. 15, 2024), however, none of the sentences imposed were the result of a negotiated guilty plea. The sentence in this case was the result of a probation revocation hearing, and the sentences in 2022-CF-101 and 2022-CF-185 were the result of open guilty pleas. Accordingly, the defendant argues that the trial court's admonishments were indisputably deficient, and constituted actual prejudice and the denial of real justice. The defendant asks this court to remand the matter for a new sentencing hearing and proper Rule 605(a) admonishments, or, alternatively, to reduce her sentence.

8

¶ 24    In response, the State concedes that the trial court improperly admonished the defendant pursuant to Rule 605(a), but argues that remand is not required since the inadequate admonishments did not result in prejudice or denial of real justice. Further, because the defendant raises sentencing issues on appeal, the State argues that this court should consider the defendant's sentencing claims on the merits rather than remanding the matter to the trial court for new Rule 605(a) admonishments

¶ 25    Rule 605(a) sets forth the appeal admonishments that a defendant should receive following resentencing after a probation revocation. Ill. S. Ct. R. 605(a) (eff. Apr. 15, 2024); *People v. Dowding*, 388 Ill. App. 3d 936, 942 (2009). Where a defendant receives incomplete Rule 605(a) admonishments about the preservation of sentencing issues for appeal, remand is required only if the inadequate admonishment results in prejudice or a denial of real justice. *People v. Henderson*, 217 Ill. 2d 449, 466 (2005). If a defendant raises sentencing issues on appeal despite improper admonishment, this court is alerted to the existence of the issues and can take whatever action it deems appropriate, "including hearing the challenges itself or remanding them to the trial court." *Id.* at 468; see *People v. Stewart*, 365 Ill. App. 3d 744, 752 (2006) (electing to consider excessive-sentence claim instead of remanding for Rule 605(a) admonishments). Where the reviewing court addresses and rejects a defendant's sentencing claims on the merits, he or she has not been prejudiced or denied real justice as a result of the error in admonishments about filing a motion to reconsider sentence. *People v. Medina*, 221 Ill. 2d 394, 412-14 (2006).

¶ 26    In this case, the defendant argues excessive sentencing and consecutive sentencing claims on appeal, alerting this court to the defendant's sentencing issues. As such, we find that the defendant has adequately addressed her sentencing claims, and we shall exercise our discretion to decide those claims on the merits rather than remand the matter for proper Rule 605(a)

admonishments. For the following reasons, we find the defendant's claims lack merit, and as such, she has not been prejudiced or denied real justice.

¶ 27                                    B. Sentencing Claims

¶ 28    The defendant raises two sentencing claims. She first claims that her three-year resentence was excessive and an abuse of the trial court's discretion. Secondly, the defendant claims that the trial court's imposition of discretionary consecutive sentences was an abuse of discretion. We review a trial court's sentencing decisions for an abuse of discretion. *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). A trial court has broad discretionary powers in imposing a sentence, and its sentencing decisions are entitled to great deference. *Id.* An abuse of discretion occurs where the sentencing court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court. *People v. Etherton*, 2017 IL App (5th) 140427, ¶ 26. The trial court's judgment regarding sentencing is afforded great deference because the court, having observed the defendant and the proceedings, "has the opportunity to weigh such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age." (Internal quotation marks omitted.) *Alexander*, 239 Ill. 2d at 213. Therefore, the reviewing court will not substitute its judgment for that of the sentencing court merely because the former would have weighed these factors differently. *Id.*

¶ 29                                    1. *Excessive Sentence*

¶ 30    The defendant argues that the Illinois Constitution states that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. This requires a trial court to balance "the retributive and rehabilitative purposes of punishment," and "[the] process requires careful consideration of all factors in aggravation and mitigation." *People v. Quintana*, 332 Ill. App. 3d

10

96, 109 (2002). Trial judges have wide discretion in sentencing a defendant, but the discretion is not unfettered. *People v. Hill*, 2022 IL App (1st) 171739-B, ¶ 45. Thus, a reviewing court can take remedial action when the sentence "varies greatly from the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense." *People v. Allen*, 2017 IL App (1st) 151540, ¶ 9.

¶ 31    The defendant concedes that she was extended-term eligible but argues that her three-year sentence was manifestly disproportionate to the nature of the offense and greatly at variance with the spirit and purpose of the law. The defendant contends, *inter alia*, that the offense of possession of less than five grams of methamphetamine was non-violent, victimless, and not such a serious offense as to warrant a three-year prison sentence. She argues that, at her resentencing, she acknowledged that she had made mistakes; had a problem; had remained sober; was trying to do better; and, had learned that "drugs ain't the answer." The defendant further contends that the State was willing to agree to a resentence of probation and the trial court was willing to impose the agreed sentence. We note, however, that this alleged "agreement" was conditioned on the defendant completing various tasks which she failed to do.

¶ 32    The defendant also contends that she struggled with drug addiction and that addiction is a brain disease that changes a person's brain, impairs the person's judgment and impulse control, and requires more drugs to feed the addiction. According to the defendant, by the time of her resentencing, she had recognized her addiction issues and made efforts toward rehabilitating herself by pursuing drug rehabilitation, which she needed to break the addiction cycle and to "counteract addiction's powerful disruptive effects" on her brain. The defendant further argues that her criminal history was neither extensive nor violent, but rather, demonstrated that she struggled with drug addiction. As such, the defendant argues that when the seriousness of the

11

offense is considered with her potential for rehabilitation, the trial court's sentence amounts to an abuse of discretion.

¶ 33 In response to the defendant's argument regarding the seriousness of the offense, the State notes that the defendant was eligible for an extended-term sentence in this case based on her 2018 Class 1 felony methamphetamine conviction, for which she was on probation when she committed the present offense. 730 ILCS 5/5-5-3.2(b)(1) (West 2020). The State notes that the applicable extended-term sentencing range for the current offense was 5 to 10 years' incarceration (*id.* § 5-4.5-40(a)), but that the trial court only sentenced the defendant to 3 years of imprisonment, below the extended-term sentencing range, and well within the nonextended statutory sentencing range. Therefore, it is presumed proper. *People v. Sturgeon*, 2019 IL App (4th) 170035, ¶ 104. The State argues that the defendant's extensive criminal history, including prior drug-related offenses, includes a period of imprisonment and periods of probation during which she continued to commit offenses. Further, while on probation in this case, the defendant tested positive for methamphetamine and denied drug use, failed to report for drug tests and probation appointments, and was convicted of Class 3 felony theft in Madison County. The State also notes that after her probation in the present case was revoked in May 2022, she was charged with another methamphetamine offense in May 2022, was charged with aggravated battery in October 2022, and pled guilty to both offenses.

¶ 34 The State contends that the defendant's criminal history supports the trial court's conclusion that she could not comply with probation and also contradicts her assertion that her criminal history contained no history of violent crime. The State argues that the trial court considered the defendant's history and character, noting that it had been dealing with her for almost 20 years, and that she continued to make excuses for her conduct. Addressing the defendant's

12

argument that she acknowledged she had made "mistakes" and had a "problem," the State argues that, contrary to her assertions, she did not admit that her problem was addiction, but rather, denied that she had been using drugs and insisted that she could not explain her recent positive drug test. Moreover, in her interview for the PSI, she said she had most recently used methamphetamine eight days prior to the interview on March 5, 2023.

¶ 35    The State further notes that the cited materials in the defendant's brief concerning the science of addiction was not presented to the trial court at resentencing and, accordingly, the trial court cannot be deemed to have abused its discretion based on material never presented to it. Regardless, the State argues that trial court was presented with the evidence of the defendant's drug use as a mitigating factor and properly considered its weight in resentencing the defendant. Addressing the defendant's claim that she had rehabilitative potential, the State argues the record reflects that the trial court gave her "every opportunity to exhibit rehabilitative potential." We agree.

¶ 36    As set forth above, the trial court continued the resentencing hearing on numerous occasions to give the defendant the opportunity to complete the various tasks and conditions that would result in an agreed probation resentence. Although the defendant did complete a detoxification program in June 2023, she subsequently failed to complete several tasks, including failing to provide a urine sample for testing, admitted using methamphetamine, and testing positive for elicit substances. During this time, the trial court advised the defendant that it had given her several chances, and on one occasion, that if she was lying regarding her drug use and tested positive, then "the years are going to be high, in the double digits."

¶ 37    A proper sentence balances the seriousness of the offense with the objective of restoring a defendant's rehabilitative potential. Ill. Const. 1970, art. I, § 11; *People v. Clemons*, 2012 IL

13

107821, ¶ 29. The Unified Code of Corrections sets out certain statutory factors in aggravation and mitigation that a trial court must consider when imposing a sentence of imprisonment. 730 ILCS 5/5-5-3.1, 5-5-3.2 (West 2022). In fashioning the appropriate sentence, the trial court must carefully consider all the factors in aggravation and mitigation, and other factors, such as the defendant's age; demeanor; habits; credibility; criminal history; social environment; and, education as well as the nature and circumstances of the crime and the defendant's conduct in the commission of the crime. *Quintana*, 332 Ill. App. 3d at 109. While the trial court must consider the statutory factors, there is no need to recite and assign value to each factor it considered. *People v. McGuire*, 2017 IL App (4th) 150695, ¶ 38. A sentence should reflect both the seriousness of the offense and the objective of restoring the offender to useful citizenship. *People v. Foxx*, 2018 IL App (1st) 162345, ¶ 50. The seriousness of the offense, however, is the most important sentencing consideration. *Id.* A sentence within the statutorily mandated range is presumed to be proper. *People v. Hamilton*, 361 Ill. App. 3d 836, 846 (2005). A defendant's rehabilitative potential "is not given greater weight or consideration than the seriousness of the offense" during sentencing. *People v. Rizzo*, 2016 IL 118599, ¶ 39.

¶ 38 Here, the defendant's probation was revoked for the offense of possession of less than five grams of methamphetamine, a Class 3 felony. 720 ILCS 646/60(a) (West 2018). Class 3 felonies are punishable by two to five years' imprisonment and are generally probationable. 730 ILCS 5/5-4.5-40(a), (d) (West 2018). In this case, the defendant was extended-term eligible and, therefore, she could have been resentenced to a term of 5 to 10 years' imprisonment. *Id.* § 5-4.5-40(a).

¶ 39 The record clearly indicates the trial court carefully considered the evidence and arguments presented at sentencing, weighed the factors in aggravation and mitigation, and fashioned an appropriate sentence in line with the seriousness of the offense and the defendant's rehabilitative

14

potential. The record indicates that the trial court gave the defendant numerous opportunities to complete the conditions necessary for the State and the trial court to follow the parties' "agreement" to resentence the defendant to a term of probation. The record is also clear that the defendant failed to compete these conditions and committed two new felony offenses while awaiting sentencing. The findings and comments made by the trial court, although seemingly harsh at times, indicate its frustration with the defendant in her unwillingness to complete the conditions although given every opportunity to do so. Nothing in the arguments presented by the defendant on appeal persuades us otherwise. We decline to reweigh the evidence and usurp the trial court's discretion in fashioning an appropriate sentence in this matter. Based on the record before us, the defendant's sentence was neither greatly at variance with the spirit and purpose of the law, nor manifestly disproportionate to the nature of the offenses. Accordingly, we find that the imposed sentence was not an abuse of discretion.

¶ 40                          2. *Consecutive Sentences*

¶ 41    The defendant next argues that the trial court's imposition of consecutive sentences was error because the trial court failed to explain the statutory section on which it relied to impose consecutive sentences. Here, the trial court ordered that the defendant's sentences in 2022-CF-101 and 2022-CF-185 be served consecutively to the sentence in this case. The defendant contends that a "review of the relevant statutory scheme suggests that the trial court imposed consecutive sentences pursuant to section 5-8-4(c)(1), as none of the other provisions would apply to the facts" of this case. Section 5-8-4(c)(1) provides that the trial court may impose a consecutive sentence:

> "If, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is the opinion of the court that consecutive sentences are

required to protect the public from further criminal conduct by the defendant, the basis for which the court shall set forth in the record." 730 ILCS 5/5-8-4(c)(1) (West 2022).

We agree with the defendant that, at the time of the commission of all three offenses, the only available statutory basis for discretionary consecutive sentences was that the trial court was of the opinion that they were necessary to protect the public from further criminal conduct by the defendant. *Id.* § 5-8-4(c).

¶ 42 The defendant argues that the trial court failed to state that consecutive sentences were necessary to protect the public. In support of her argument, the defendant cites *People v. Hoffman*, 2020 IL App (2d) 180853, ¶ 36, for the proposition that "[a] trial court's imposition of consecutive sentences [is] not in and of itself sufficient to imply that the court was of the opinion that the consecutive term was necessary for the protection of the public ***" (internal quotation marks omitted). The defendant also states that, while a trial court is not required to recite the language of the statute, "[w]hat is required is that the record show that the sentencing court is of the opinion that a consecutive term is necessary for the protection of the public." (Internal quotation marks omitted.) *People v. Hicks*, 101 Ill. 2d 366, 375 (1984). The defendant argues that the trial court failed to state that consecutive sentences were necessary to protect the public, and that the record does not support such a finding.

¶ 43 In response, the State concedes that the trial court did not specifically state that it found that consecutive sentencing was required to protect the public from further criminal conduct by the defendant. The State argues, however, that the trial court did not need to recite the language of the statute, as its requirement that the trial court set forth the basis for its determination is permissive, not mandatory. *Id.* at 374-75. The State argues that the record demonstrates that the

16

trial court was of the opinion that a consecutive term was necessary for the protection of the public. We agree with the State.

¶ 44    A record on appeal will be deemed to show that the trial court was of the opinion that consecutive terms were necessary for the protection of the public where, for instance, the trial court comments on the defendant's criminal history or its belief that the defendant will reoffend. *People v. Coleman*, 166 Ill. 2d 247, 260-61 (1995). In this matter, the trial court remarked at a prior hearing that only discretionary consecutive sentences would be available when the defendant was resentenced in the present case and sentenced in case numbers 2022-CF-101 and 2022-CF-185. As noted above, the trial court gave a lengthy explanation of its sentences referencing the defendant's prior criminal history and that the trial court had been dealing with her for close to 20 years. The trial court noted that the defendant continued to commit felony offenses while on probation and that it had no faith that the defendant could comply with the terms of probation. The trial court acknowledged the defendant's difficult past but that she gave the trial court "zero indication" that she could "survive in society." Further, and importantly in this case, the trial court noted that it had given the defendant "more opportunity than I have anybody else ever before." The trial court indicated that the defendant had exhausted the trial court's patience after she received these chances, by giving excuses such as that she had not used drugs or that the positive drug test was wrong. The trial court's comments, taken as a whole, clearly indicate its belief that the defendant could not conform her conduct to the law, that she would not be rehabilitated, and that she would continue committing crimes.

¶ 45    In challenging the trial court's imposition of consecutive sentences, the defendant repeats many of her arguments regarding excessive sentencing, including her argument that the crime at issue in this case was not that serious; the offense was not violent; her speculation that the

methamphetamine at issue was for personal use; her argument that her real problem was addiction; her assertion that she acknowledged in her statement in allocution that she had an addiction; and her argument that she had attended a three-day detoxification program. We are not persuaded. The trial court weighed the fact that the defendant had been dealt a "bad hand" with her criminal history; her failure to conform her conduct to the law; her lack of potential for rehabilitation; and, the trial court's belief that the defendant would continue committing crimes.

¶ 46    The record is clear that the trial court determined that consecutive sentences were necessary to protect the public from further criminal conduct by the defendant. We find that the trial court's decision was not arbitrary, fanciful, or unreasonable, or where no reasonable person would take that view. Therefore, we find that the trial court did not abuse its discretion in its imposition of the discretionary consecutive sentences in this matter.

¶ 47    Therefore, we exercise our discretion to decide the defendant's sentencing claims on the merits rather than remand the matter for proper Rule 605(a) admonishments. We find that the defendant's sentencing claims lack merit, and as such, she has not been prejudiced or denied real justice. We find that the trial court did not abuse its discretion in that the defendant's sentence was neither greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offenses. We further find that the trial court did not abuse its discretion in the imposition of discretionary sentences when its findings and comments, taken as a whole, clearly indicate that it had determined that consecutive sentences were necessary to protect the public from further criminal conduct by the defendant.

¶ 48                                    III. CONCLUSION

¶ 49    For the foregoing reasons, the judgment of the trial court of White County is affirmed.

¶ 50    Affirmed.

18